**STAIR v. SMITH, 'County Judge, et al.**
**(No. 7002.)**

Court of Civil Appeals of Texas. Austin.
Oct. 26, 1927.

**1. Witnesses ⬅227—Taxpayer, failing to object to introduction of unsworn testimony at hearing to raise assessment, waived any objection based on requirement of oath (Rev. St. 1925, art. 7212).**

Taxpayer, present at hearing, who failed to object to introduction of unsworn testimony at hearing of board of equalization to raise assessment, *held* to have waived objection that no sworn testimony was introduced at hearing, as required by Rev. St. 1925, art. 7212.

**2. Witnesses ⬅227—Failure to object to unsworn testimony is waiver of objection, based on failure to swear witness.**

Party who permits without objection witness to testify who has not been sworn waives all objections to his evidence based on failure to swear him.

**3. Taxation ⬅490—Proceedings of board of equalization increasing assessment on basis of sworn testimony, where taxpayer was notified and appeared, held legal and binding (Rev. St. 1925, arts. 7206, 7212).**

Action of board of equalization in increasing assessment on taxpayer's property, on basis of sworn testimony and documentary evidence, *held* not void as arbitrary or illegal or without evidence, where board met in compliance with Rev. St. 1925, art. 7206, and notified taxpayer to appear, and where taxpayer actually appeared, but left hearing voluntarily before its conclusion, action of board being final under article 7212.

**4. Taxation ⬅493(1)—Where evidence warranted increased valuation, action of board in considering personal knowledge of members as to value, if it were error, was not prejudicial.**

If conduct of board of equalization in taking into consideration personal knowledge of members of value of property on which assessment was sought to be increased should be con-

sidered error, no prejudice resulted, where evidence on which valuation fixed by board could be based was sufficient.

**5. Taxation ⬉485(2)—Action of board of equalization in considering market or intrinsic value of adjoining lands to determine uniformity and equality in valuation held not error (Rev. St. 1925, art. 7212).**

Action of board of equalization, in proceedings under Rev. St. 1925, art. 7212, to raise assessment, in taking into consideration fair market or intrinsic value of adjoining lands similarly situated and of similar productivity as to oil, *held* not error in injunction suit, especially where value of adjoining properties were considered in connection with issue of uniformity and equality of taxation.

**6. Taxation ⬉63—One-eighth part of oil production required to be delivered to lessor held taxable as lessor's "real property" (Rev. St. 1911, arts. 7503, 7504).**

Under lease providing for delivery to lessor's credit of one-eighth part of oil produced and saved from leased premises, title of lessor to such fraction of minerals *held* "real property" under Rev. St. 1911, arts. 7503, 7504, and subject to taxation as such.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Real Property.]

**7. Trial ⬉150—Defendant's motion for judgment at conclusion of plaintiff's evidence for alleged failure to establish right to relief held not demurrer to evidence.**

Defendant's motion for judgment at conclusion of plaintiff's evidence on basis of failure to establish allegations entitling plaintiffs to relief *held* not demurrer to evidence such as would preclude defendant from proceeding with case.

Appeal from District Court, Caldwell County; M. C. Jeffrey, Judge.

Proceeding by O. F. Stair against M. U. Smith, County Judge, and others for an injunction. From a judgment for defendants, plaintiff appeals. Affirmed.

C. F. Richards and E. B. Coopwood, both of Lockhart, and Hart, Patterson & Hart, of Austin, for appellant.

Fred L. Blundell and Tom Gambrell, both of Lockhart, for appellees.

BLAIR, J. By this proceeding appellant sought to enjoin the board of equalization, the tax assessor, and the tax collector of Caldwell county from taking any action to enforce and from the collection of taxes on certain property owned by him in that county, at the valuation fixed by the board for the year 1925, alleging: First, that he assessed the property at $15,000, but that the board of equalization, "without the introduction of any testimony," and without evidence or proof, arbitrarily and illegally increased the assessment to $32,000; and, second, that appellant's one-eighth royalty interest in the oil produced and saved from the realty involved, which constituted the basis for the increased assessment, was not taxable as an interest in or a part of the real estate, and therefore could not be taken into consideration in determining the fair market or intrinsic value of the real estate for taxation purposes.

A trial to the court without a jury resulted in a judgment denying the injunctive relief prayed for. We sustain the judgment.

[1] In reference to the question that the increase of the assessment was made "without the introduction of any testimony," etc., the gravamen of the complaint here is that no sworn testimony was introduced at the hearing to raise the assessment, in violation of article 7212, R. S. 1925, which provides that witnesses "shall testify under oath" at hearings before boards of equalization seeking to increase or diminish the valuation of property for taxation purposes. But appellant, who appeared in person and by attorneys at the hearing, made no objection that witnesses giving testimony, including himself, were not sworn, and will be held to have waived the fact that witnesses were not sworn.

[2] It is well settled in this state that, "a party, who permits without objection a witness to testify who has not been sworn, thereby waives all objection to his evidence based on the failure to swear him." Trammell v. Mount, 68 Tex. 211, 4 S. W. 377, 2 Am. St. Rep. 479; Cauble v. Key (Tex. Civ. App.) 256 S. W. 654.

[3] We are also of the opinion that the trial court correctly concluded under the evidence in this case that the board of equalization did not arbitrarily and illegally raise appellant's assessment without evidence, but, to the contrary, it is shown that appellant had all the hearing on his contest that he demanded or was entitled to, and that the board of equalization, in honest exercise of intelligent judgment, increased the valuation of appellant's property, which action of the board is final under provision of article 7212, R. S. 1925; Allen v. School District (Tex. Civ. App.) 283 S. W. 674. It is undisputed that the board of equalization met in compliance with article 7206, R. S. 1925, and proceeded to perform the duties required of them by that statute. They heard sworn testimony, and had filed with them documentary evidence concerning the value of appellant's property, and determined that it was their duty to raise the assessment from $15,000 to $40,000. They notified appellant of their action, and cited him, as provided by article 7212, R. S. 1925, to appear on July 2, 1925, and show cause why the increase should not be made. He appeared on the day appointed with his several counsel, at which time an informal hearing of the matter was had.

We will not undertake to state all that transpired at the hearing, but the following will suffice to amply support the trial court's judgment on the issues raised. One of appellant's attorneys testified as follows:

"At that time no witnesses were sworn. It was heard more or less informally, before the court; Mr. Stair and yourself (Mr. Richards) and I all made statements before the commissioners' court, and answered questions."

"I think I was there when the records were offered, showing what the total runs were for the year, on his and the other tracts of land in the county. As I remember it, the records were offered showing the total runs. As to the records also being offered showing monthly production, I think Mr. Stair offered his records, as well as the court offering like records. I mean by 'offering' it, that they were there and that the different ones were read; as to whether they were offered in evidence or not, I am not saying. Anyway, they were all read to the court there. A number of questions were asked Mr. Stair by Judge Smith, and perhaps some by yourself. No objection was made, that I heard, by Mr. Stair or by any attorney representing him there, to answering those questions, on the ground that he was not sworn."

Another of appellant's attorneys testified:

"I was present when Mr. Stair's matter—the matter of his assessment—was taken up in conjunction, and at the same time Mr. Proctor's assessment was taken up. That is Mr. George Proctor. Both were taken up at the same time.

"I was present all the time that that court was considering and hearing testimony on those two items. I made a statement to the court as to the status of the property, the royalty, or oil rent, out of this land. When the matter of Mr. Stair's and Mr. Proctor's came up, they were both taken up informally about the same time. * * * I advised the court that our proposition was that royalty was not assessable at all; that we claimed under the oil and gas lease that had been executed by Mr. Stair long prior to 1925, that the title to the minerals in place was in the lessee, and that the lessor had no right or interest in the minerals until actually produced and saved."

"I think it was agreed that those records, as to Mr. Stair, are correct. I think it was agreed by Mr. Stair and myself that the records were correct."

These records showed the monthly production of oil produced and saved for the year 1924 on the land in question, which amounted to more than $26,000 to appellant's part. Appellant's sworn assessment was before the board. It stated that for the month of December, 1924, the oil royalty was $2,595, and he rendered the land at $15,000, which he stated was about 40 per cent of the value of the oil produced and saved to him during 1924.

After the above proceedings, appellant was asked by a member of the board at what value would he be willing to render his property. He stated a certain amount about which there is a conflict of testimony, but his offer was refused, and he voluntarily left the hear-

ing with this statement to the board: "Well, there will be a hereafter about this, I suppose." One member of the board testified that, before the board had completed its labors and findings, appellant left, and that "he ought to have known the hearing wasn't over, when we told him it wasn't. We heard evidence after that, and by sworn testimony." The county judge testified that, after appellant voluntarily left the hearing, a witness by the name of Peale was sworn as to the Stair investigation, and testified from a prepared list as to appellant's "oil runs" from the tract of land here involved. A list prepared by this witness showing oil productions from all lands in this particular field, including production from appellant's land, bore the file mark of the county clerk as of date of the hearing. The above shows that appellant had all the consideration he demanded, and, indeed, all that he was entitled to under the circumstances. No complaint is made on this proceeding either by pleading or proof that appellant desired to make any further proof of his contest. The board heard everything he offered as evidence, and evidently gave full credence to it, for they reduced their tentative increase of value from $40,000 to $32,000 after the hearing. Counsel for appellant were afforded full opportunity to argue his case before the board, which they did. And it may be said here that counsel did not attach any particular significance to the authority of the board to raise the assessment under the evidence adduced, but their principal contention was "that the title to the minerals in place was in lessee, and that the lessor had no right or interest in minerals until actually produced and saved," and that "royalty was not assessable at all * * * under the oil and gas lease" executed by appellant.

[4] Complaint is also made that the board took into consideration in fixing the assessment illegal testimony, such as their own personal knowledge of the value of the property and the value of other property similarly situated and of similar productivity as to oil.

It is held in Johnson v. Holland (Tex. Civ. App.) 43 S. W. 71 (writ of error refused by the Supreme Court), as follows:

"The value to be fixed by the board, where a contest is made, shall be the result of their deliberate judgment, exercised in the light of the facts proven, as well as of matters within their own knowledge."

But, aside from this question, there was sufficient evidence upon which the valuation fixed by the board could be based, and, if it was not authorized to take into consideration personal knowledge of its members without swearing them and obtaining their personal information as evidence, then no harm has been done.

[5] For the same reason the complaint that

the board could not legally take into consideration in determining the fair market or intrinsic value the value of adjoining lands similarly situated and of similar productivity as to oil is without merit. However, we are of the opinion that value of adjoining property may be taken into consideration by boards of equalization in determining whether taxes are uniform, equal, and that no discrimination is being made, provided the property is not valued at more than the fair market or intrinsic value for taxation purposes. In fact, we see no other reasonable way by which that issue could be determined. The record also already shows that it was in connection with the issue charging lack of uniformity and equality raised by appellant's pleadings that the board considered the value of adjoining properties, and not in the matter of fixing its fair or intrinsic value for taxation purposes.

[6] As to the interest of appellant in the oil produced and saved from the land the lease provides:

"To deliver to the credit of lessor, free of cost, in the pipe line to which it may connect its wells, the equal one-eighth part of all oil produced and saved from the leased premises."

In the recent case of Hager v. Stakes, 294 S. W. 835, the Supreme Court held in effect that the title to the fraction of minerals was not conveyed by leases of similar language and purport as the one in suit, but remained in lessor, and was "real property" within the meaning of article 7503—04, Rev. St. 1911, making all real, personal, or mixed property subject to taxation. This decision is conclusive against appellant's contention that his interest reserved by the lease was not such a part of the real estate as to subject it to taxation as real property.

[7] The remaining question relates to action of the court on what appellant denominates "a demurrer to the evidence" made by appellees' counsel at the conclusion of appellant's evidence. While appellees' counsel used that language to begin with, the record clearly shows that as finally presented he merely moved the court for judgment "on the basis that they have failed to establish the allegations that would entitle them to the relief prayed for." Therefore the rule contended for by appellant and applicable to

cases where a demurrer to the evidence has been made and acted upon is not here involved. Ward v. Walker (Tex. Civ. App.) 159 S. W. 320; Hook v. Payne (Tex. Civ. App.) 211 S. W. 280.

We find no error in the judgment, and it is affirmed.

Affirmed.